The case is submitted on the briefs so we will move on to case number six which is Ahmed against the Attorney General William Barr and we should have, probably going to butcher the pronunciation, Ms. Hara Simif and Mr. Kazam. So Ms. Hara Simif. Are you muted? Good morning. Oh, there you are. Okay. Good morning. May it please the court, may I, may I, may I start? Please. Yes. May it please the court, my name is Rexelana Hara Simif and I represent Jillalli Ahmed, the appellant in this case. Mr. Ahmed is seeking asylum based on a well-founded fear of future persecution by radical terrorists in Algeria. The facts of this case are not complicated. A threat addressed to appellant citing his past participation as a police officer in Islamic group of jihad. Ms. Hara Simif, you are admitting, aren't you, that we are here on the second motion to reopen, that's what's before us, is that correct? Yes, your honor. All right. You may continue. Shortly thereafter, a car belonging to appellant's brother was set on fire and the brother went into hiding. Fearing retaliatory persecution upon return to Algeria, appellant moved to have his application for asylum reopened based on a well-founded fear of future persecution. Appellant is seeking asylum under section 1208.13b1, which grants asylum when there is fear of a reasonable possibility of serious harm upon removal. So, isn't the problem here, excuse me, Ms. Hara Simif, isn't the problem here that the board, in response to this second motion to reopen, found that the information that he other things, wasn't new, you know, that the situation, regrettably, in Algeria has been about the same for a long time, and why, by what right do we disagree with that finding, that assessment of the newness of this information? Well, the threat was delivered after the first set of hearings was helped. Right. Definitely, that's certainly true. The threat's in 2018, so that much, at least, maybe with particular reference to him, it's new. But the board, in its response, just says, we don't think that he has justified the rather extreme step of reopening, that he's always had a fear of persecution from these particular groups in Algeria, who don't like police officers, who enforce the law against them, right? Well, that's correct, except that he had been visibly present in the anti-terrorist warfare, because he had been a guard at the detention camps passed by the government, also because he was a surveillance officer at the international airport in Algiers, where he had information as to various provisions of security operations. So that makes him a much more visible person now than it was before. But don't we have to have an additional component? Doesn't there also have to be evidence that he presented that the Algerian government was not going to defend him or protect him? It seems to me that that's lacking here, and that's a distinguishing factor from this horror HOR case. Well, he actually received an affidavit from a government official, which stated that they they could not protect him. That's not in the record for this second motion, though, is it? I thought that was one of your problems. No, it's part of the record that went before the BIA. Well, I thought, though, that that record from the government official and the letter from the lawyer was submitted in support of the third motion to reopen, which is not, I think that's why Judge Brennan's question was a good one, which is not before us. I mean, we can't just keep supplementing the evidence, or I suppose we could, but that's not the way it's done. Well, the reason this was done later was because we were asked to support our appeal by presenting evidence that, in fact, he would have problems when he returned to Algeria. This is under the court. I mean, this is what happened. I mean, it seems it's just the way the laws work. I mean, there are a lot of technical requirements, but the May 20, 2019 decision of the Board of Immigration Appeals gives the two reasons for rejecting the second motion to reopen. Number one, that the letters don't reflect materially changed country conditions because of this ongoing conflict between the security forces and the terrorist group. So no change, they say. And further, no evidence that the government would be unwilling or completely unable to protect. And at the time the board decided, at the time they issued this decision, correct me if I'm wrong, but it's my understanding that the statement from the government official and the letter from the lawyer were not at that point in the record. Is that correct? No, they were of record as far as the BIA was concerned because that was part of the second filing to the board, the second motion to reopen to the board. So that was part of the second motion. I have your second motion in front of us, and it looks like, I might be mistaken, but it looks like it's a 26-page document or so. Do you know where, or can you just point us to where that affidavit is in that statement from that government official? Is what page specifically in the second motion to reopen? It's not, it's not, fortunately it's, the pages are not, it's not page, oh no. We will wait, well. No, that's fine. Your view though, or your understanding is that it, in response to Judge Wood's question, is that it was, those two documents in fact were part of the second as opposed to the third motion to reopen? I mean, for me that's an important question because my understanding is that the government letter and the lawyer letter come in only at the third motion, and if that's the case, then I don't know how we rely on them in reviewing the disposition of the second one. If you'd like to take a look while you're waiting. I'm sorry, I don't. Why don't you take a look while Mr. Kazam is giving his argument and you can reply to us on your rebuttal. And maybe I'll invite you to sit down now and do that and hear from Mr. Kazam, or sit down metaphorically speaking. We will turn over to Mr. Kazam at this point. Mr. Kazam. Are you muted? My apologies. Very good. May it please the court. I'm Alexander Kazam for the United States Attorney General. The board acted well within its broad discretion in denying Petitioner's second motion to reopen. As the board concluded, Petitioner failed to meet his heavy burden of demonstrating a material change in conditions in Algeria. Moreover, Petitioner failed to establish a prima facie case of eligibility for asylum because the evidence in the record does not indicate that the Algerian government would be unable or unwilling to protect Petitioner from terrorists. Mr. Kazam, I wanted to ask you a question about that. If I'm remembering correctly, you mentioned at one point in your briefs that one piece of is that they build compounds for them to live in. But it was my understanding that those compounds are for people who are currently security officers. I did not understand that the government of Algeria has built compounds for everybody who's a former security officer, such as Mr. Ahmad. So I wondered if you could clarify that. That's my understanding as well, Your Honor. It's only current. So the compounds are useless to him because he's not in the security forces anymore. I think it's perhaps some circumstantial evidence of how seriously the government of Algeria takes the threat of terrorism. And I think that's corroborated, in fact, by the news articles that Petitioner himself submitted, which indicate that the Algerian government has carried out many effective counterterrorism operations throughout the country.  I don't find them particularly helpful with respect to what must be a large number of people with prior experience in the security forces. But the news articles, there may be other evidence that you have, which is fine. Mr. Kazam, it's Judge Scudder. Going to the question that we were asking your adversary here, it looks like on page 15 of your red brief that you share the understanding that was conveyed in Judge Wood's question that the third motion to reopen from February of 2020 contained that document from the Algerian government official and the Algerian lawyer in an effort to cure deficiencies with some of the proof on the second motion to reopen. Is that your understanding of what the filings show? Yes, that's right. That's right. My understanding is that the letter from the Algerian attorney and the letter from the Algerian government official were submitted with the third motion to reopen. There was no petition for review filed from the board's decision on that motion to reopen, and therefore, that evidence is not properly before the court. So in the second motion to reopen, there is the letter from the Islamic group in Algeria and then the letter from the brother, correct? Yes, that's right. That's right, as well as some news articles about terrorism in Algeria and the government's response to that terrorism. I have to say, Mr. Kuzam, obviously, we follow whatever we need to follow in this, but it's deeply disturbing to think that a letter from a government confirming that they just aren't going to do anything to protect somebody from terrorism still allows us to require that person to be removed to that country in the near certain knowledge that they'll be killed. That would keep me awake at night. So, Your Honor, as an initial matter, as we've discussed, that evidence isn't before us. I get that. I understand. I'm just saying because of these rules, the position of the United States government is that we should send somebody to a country to face near certain death, which is a harsh position to take. I'm not, again, I'm not sure that that's what the evidence would reflect. Again, I think, you know, if the analogy is to the case in Boer, that was a case where there was a direct confrontation in the streets with the terrorists. The evidence was far more compelling. You had the Algerian military, as well as a court, indicating directly that it was unable to protect that individual. So I don't believe the evidence rises to that level here, even if the court were to consider that. And as an additional point, you know, there's no indication that this kind of evidence wasn't available in the prior proceeding. And so that would be an additional reason why it would not be considered. Meaning, you could have gone to the government before and gotten the identical letter, one assumes, or at least potentially. Right. Right, right, exactly. And so if I may, I mean, if the court, if I may turn to the evidence at issue in this case, I think it's pretty clear that there's no material change from the time of Petitioner's original merits hearing to his motion to reopen. At the time of the merits hearing, Petitioner testified that his family had received, quote, many, many death threats, that terrorism was rampant in Algeria, and that Petitioner was so afraid of the terrorists that he relocated to the middle of the desert. Now, Petitioner's new evidence, while it does, as Your Honor acknowledged, demonstrate an ongoing conflict between the government and the terrorists, it doesn't show the kind of, quote, fundamental shift in safety and security that this court has said is required. So here's my question about that. The board certainly says exactly what you just said, and I'm certainly prepared to believe there's been a very long-standing conflict between the security forces, both present and past, on the one side and the terrorist groups on the other side. It's another thing to equate a general conflict in the country where, you know, we basically say we can't solve all the problems of every country in the world with a particular, you know, we, this particular terrorist group, are going to kill you, Mr. Ahmad. The specificity of it seems to take it outside the scope of what was considered before. So I, Your Honor, I would say that the difference is not as great as it might seem, because as Petitioner testified before, that he believed the terrorists knew him well, that he was high enough profile, and that they would find him and discover him. So I think at this point, essentially, what they have done is, purportedly, is to put that in writing, and I don't think that that's the kind of new threshold of danger that this court has said is required. So that's on the material change prong. And then I would also point out that if you look at the news articles submitted along with the motion to reopen, I think they actually indicate that, if anything, the general conditions regarding terrorism in Algeria have improved. There's a news article, for example, at AR33, that attacks and bombings have become rarer since the end of the country's 1990s war against armed Islamists. And then Petitioner's own motion concedes that the threat of terrorism in Algeria has somewhat subsided. So, you know, as for the letters, I think, you know, Petitioner's claim is that they continue to look for him, and they, quote, haven't forgotten him. But a continuation of circumstances that existed previously isn't a change, let alone a material change. And the court has made clear that even a cumulative worsening of conditions is not sufficient to establish that new threshold of danger. So I don't think there's a case to be made that the board abused its considerable discretion in concluding that there was no evidence of a material change in country conditions. And then there's a second independent component, I think, as Judge Brennan may have pointed out. The board also recently concluded that Petitioner failed to meet his burden of establishing eligibility for asylum. I think the only evidence here, Petitioner's only response to this point is to cite the reasons much more compelling testimonial evidence. And the evidence there was also corroborated by State Department country conditions reports from 2003 to 2005. The conditions that were described in the Hoare decision also relate to 2000. So if anything, that further demonstrates that there has actually been an improvement in the situation in Algeria, perhaps both with respect to the government's ability to protect and with the threat of terrorism in the first place. So for both of those reasons, unless the court has any further questions, I'd ask the court to affirm. All right. Thank you very much. Anything further, Ms. Arasemiu? Yes, I did find it is in the two letters are in the appendix, pages 10 through 13. And as far as the conditions in the country are concerned. Hold on, our time is up. 10 to 13, part of the second motion to reopen because the. No, it's part of the third. Part of the third. Okay. And as far as the conditions of the country are concerned, the situation in Algeria right now is not that it has worsened and it has deteriorated to the point that the terrorists are much more active that they were even a few years ago. So this is what creates that genuine fear of further future persecution that my client has. And that is the reason. And since he has filed under the statute that lets him go under the under that section that if he has. Fear of genuine fear, then he should then we are asking this court. To grant them the petition. All right. Thank you very much. Thanks to both counsel. The court will take this case under advisement.